IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Shelby Larsen,

    Plaintiff,

  v.

Sensient Flavors LLC,

    Defendant.

Case No.: 24-cv-50339

Judge Iain D. Johnston

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shelby Larsen alleges that Defendant Sensient Flavors fired her because of her disability in violation of the Illinois Human Rights Act (IHRA). [1]. After answering the complaint, Sensient moved for summary judgment. Sensient contends that Larsen was not disabled within the meaning of the IHRA, that her alleged disability was related to her job duties, and that her termination was not related to her disability. [36]. Sensient also states that it had a legitimate, non-discriminatory and non-pretextual reason for terminating Larsen. *Id.* For the following reasons, Defendant's motion for summary judgment is granted.

**Background**[1]

In May 2020, a staffing agency placed Larsen at Sensient on a part-time basis. Dkt. 37 at ¶ 1. Sensient manufactures flavors and ingredients for the food and beverage industry. *Id.* at ¶ 2. Sensient hired Larsen full-time in June 2021 to operate equipment, stack and pack Sensient's products, and clean equipment. *Id.* at

---

[1] Larsen did not file a response to the statement of facts. Accordingly, Defendant's facts are admitted and undisputed. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219–20 (7th Cir. 2015)

¶ 7. Postings for Larsen's role indicated that she would be required to work overtime and extended hours when necessary. *Id.* at ¶ 8. After becoming a full-time employee, Larsen regularly worked overtime for several months because she believed it was "mandatory." *Id.* at Ex. 1 28:21.

**Complaints about Larsen's Conduct**

Larsen had several run-ins with Sensient's Human Resources Department during her employment. First, sometime in 2020, Sensient's HR Manager, Amy Liebing, and an Operations Supervisor, John Corcoran, spoke with Larsen about her behavior at work. *Id.* at ¶ 27. In February 2021, Liebing received an email from a production manager indicating that Larsen was not behaving professionally. *Id.* at ¶ 28. Sensient gave Larsen a formal verbal warning and issued a disciplinary report. *Id.* at ¶ 29. Larsen indicated that she was surprised by this, that she had not engaged in inappropriate behaviors, and that the basis of the warning had been "made up." *Id.* at ¶ 31. In July 2021, Larsen confronted a supervisor about an issue with an earlier shift and later confronted coworkers about their work. *Id.* at ¶ 32. Larsen received a verbal warning. *Id.* Larsen states she submitted complaints about her colleague's use of inappropriate language but has no records or recollection of the specific details of the complaints. *Id.* at ¶ 33.

On February 4, 2022, Corcoran emailed Liebing to report additional unprofessional conduct by Larsen. *Id.* at ¶ 34. Although Larsen denied engaging in inappropriate conduct, statements from several different employees substantiated the report. *Id.* at ¶¶ 34–36. On February 14, 2022, Larsen submitted a written

2

statement indicating that other employees were the source of any problems and that they had engaged in unprofessional behavior towards her. *Id.* at ¶ 38. On February 23, 2022, Sensient issued a written warning and disciplinary report concerning the February 4, 2022, incident. *Id.* at ¶ 41. The warning indicated that termination could occur if Larsen violated Sensient's code of conduct again. *Id.*

A final set of incidents occurred on August 18 and 19, 2022. On the 18th, Larsen challenged another employee, Jennifer Thompson, about Thompson's break schedule. *Id.* at ¶ 44. The next day, Larsen and Thompson had a discussion that resulted in Thompson crying. *Id.* at ¶ 47. Thompson reported the conversation to Liebing who asked Thompson to prepare a written statement. *Id.* at ¶ 48. Thompson did so outside of Liebing's presence. *Id.* Liebing and another HR representative met with Larsen and informed Larsen she would be suspended pending an investigation.[2] *Id.* at ¶¶ 49–51. Liebing already knew she would be recommending termination. *Id.* at ¶ 50. It's not clear that any further investigation occurred. *Id.* Liebing proceeded with disciplinary procedures and terminated Larsen through a phone call on August 23, 2022. *Id.* at ¶ 52. Sensient also provided Larsen with a letter informing her that she had been terminated for failing to uphold Sensient's standards of professionalism. *Id.* at ¶ 53.

---

[2] Larsen contends that she only smiled at Liebing during the meeting, while Liebing contends that Larsen acknowledged "losing her cool" with Thompson. Dkt. 37 at ¶ 49. Because evidence is viewed in the light most favorable to the nonmoving party, the Court will construe this event in Larsen's favor. *Logan v. City of Chicago,* 4 F.4th 529, 536 (7th Cir. 2021)

3

**Larsen's Injury**

On February 14, 2022, Larsen was injured at work when a clamp fell and hit her shin. *Id.* at ¶ 10. Alleged nerve damage resulting from this injury is Larsen's claimed disability. She did not seek medical attention on-site but instead took herself to an emergency room at the end of the work shift. *Id.* at ¶ 10; *id.* at Ex. 1 63:6. On February 17, 2022, Larsen provided a medical note from a physician specifying certain work restrictions. *Id.* at ¶ 11. Subsequent medical notes in March and April 2022 reiterated the work restrictions. *Id.* at ¶ 13. On May 5, 2022, Larsen provided Sensient with a form indicating that she could return to work without restrictions. *Id.* She provided Sensient with another form indicating the same on June 7. *Id.* at ¶ 15. From May through the end of July 2022, Larsen worked overtime on several occasions. *Id.* at ¶ 17. But on August 12, 2022, Larsen provided Sensient with another medical note indicating that she could not work overtime. *Id.* at ¶ 19.

None of the forms indicated that she had a disability nor could Larsen definitively state who at Sensient she told about her disability. *Id.* at ¶¶ 20, 25. Liebing first learned of Larsen's disability when she received Larsen's Charge of Discrimination. *Id.* at ¶ 26.

**Legal Standard**

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a

4

reasonable jury could return a verdict for the nonmovant, construing the evidence and all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008).

The Court will "consider all of the evidence in the light most favorable to the non-moving party, and [ ] draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotation omitted).

**Analysis**

Larsen brought this action alleging a single violation of the IHRA. IHRA claims are decided by the same standards that govern analogous ADA claims. *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019). Larsen can proceed under the familiar *McDonnell Douglas* burden shifting standard. *Van Campen v. Int'l Bus. Machs. Corp.*, 762 N.E.2d 545, 552 (Ill. App. Ct. 2001). The parties dispute the exact language used by Illinois courts in applying the *McDonnell Douglas* standard to IHRA disability claims. But it doesn't matter. However one slices it, Larsen can't meet any of the requirements for a *prima facie* discrimination case. Sensient easily carries its burden of articulating a legitimate non-discriminatory reason for the adverse action. And Larsen can't show a genuine issue of material fact exists that Sensient's reason was pretextual.

Both parties agree that Larsen must show that she was disabled under the meaning of the IHRA. IHRA defines a disability this way:

5

> [A] determinable physical or mental characteristic of a person, including, but not limited to, a determinable physical characteristic which necessitates the person's use of a guide, hearing or support dog, the history of such characteristic, or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic:
> > (a) . . . is unrelated to the person's ability to perform the duties of a particular job or position . . . .

775 ILCS 5/1-103(1).

According to Larsen she's disabled because the incident with the clamp in February 2022 caused nerve damage when it struck her shin. Dkt. 37 at ¶ 10. The parties dispute whether this injury was significant enough to render Larsen disabled within the meaning of the IHRA. Illinois courts have provided little guidance on the meaning of disability for the purposes of the IHRA. *See Robinson v. Vill. of Oak Park*, 990 N.E.2d 251, 257 (Ill. App. Ct. 2013) (noting Illinois' reliance on federal law for interpreting the IHRA). It's not necessary to reach the issue because Larsen's complaint fails in other respects. *See Anderson v. United States*, 417 U.S. 211, 218 (1974) ("We think it inadvisable, however, to reach out in this fashion to pass on important questions of statutory construction when simpler, and more settled, grounds are available for deciding the case at hand.").

According to Larsen, her disability prevented her from working overtime. Dkt. 37 at ¶¶ 11–12. By her own admission, however, overtime was "mandatory" and an essential requirement of employment at Sensient. *See id.* at Ex. 1 28:21. This is further supported by descriptions of the requirements of Larsen's roles and the frequency with which she worked overtime. *Id.* at ¶¶ 7–9. Larsen has not provided any evidence to the contrary. Based on the facts before the Court, no

6

reasonable jury could conclude that the ability to perform overtime was unrelated to Larsen's ability to perform the duties of her job. *See Gibson v. Milwaukee Cnty.*, 95 F. Supp. 3d 1061, 1067 (E.D. Wis. 2015) (holding that the ability to work overtime was an essential function of plaintiff's employment). Accordingly, Larsen is not disabled for the purposes of the IHRA.

Turning to the second element of the *prima facie* case for the sake of completeness, Larsen's claim fails again. Sensient asserts that Larsen must show her disability "is unrelated to [her] ability to perform the functions of the job." *Van Campen v. Int'l Bus. Machs. Corp.*, 762 N.E.2d 546, 551 (Ill. App. Ct. 2001). The Court has already found she can't.

Larsen contends she must show "she was qualified to perform the essential functions of her job with or without reasonable accommodation." Dkt. 39 at 2 (citing *Zaderaka v. Illinois Hum. Rts. Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989)). Overtime was an essential function of Larsen's job. Allowing Larsen to not perform overtime would require Sensient to assign those responsibilities to someone else. This isn't required. *Vargas v. DeJoy*, 980 F.3d 1184, 1189 (7th Cir. 2020). Accordingly, Larsen can't perform the essential duties of her employment with or without reasonable accommodation. Summary judgment in Sensient's favor is required.

Likewise, Larsen can't establish that she suffered an adverse employment action because of or related to her disability. In support of this element, Larsen points only to the temporal proximity between Larsen's disclosure of her alleged disability and her termination. It's true that temporal proximity *may* be evidence of

7

discriminatory intent. *Lalvani v. Cook County*, 269 F.3d 785, 791 (7th Cir. 2001). But alone suspicious timing isn't enough. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021) ("Suspicious timing is rarely enough to create a triable issue. As a threshold matter, the plaintiff must show that the defendant was aware of the protected conduct.") (citations omitted).

In this case, nobody at Sensient learned of Larsen's disability before her termination. The forms she submitted documenting her work restrictions did not indicate that she was disabled. Dkt. 37 at ¶ 19. At no time did she discuss her disability with Liebing, the individual who decided to terminate Larsen. *Id.* at ¶¶ 22, 25. It's not even clear that she told *anyone* at Sensient whatsoever. *Id.* at ¶ 25. Because Sensient lacked knowledge of Larsen's disability, no reasonable jury could conclude that Sensient terminated Larsen because of her disability. That's basic causation. An employer can't discriminate against an employee because of a protected class if it didn't know the employee was in the protected class. *See Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

Larsen's unprofessional behavior is also a legitimate non-pretextual and non-discriminatory reason for her termination. Sensient had ample evidence of Larsen's repeated unprofessional conduct. Sensient warned Larsen that if she continued to engage in such conduct, she would be terminated. Dkt. 37 at ¶ 41. When she did, she was fired.

To show pretext, Larsen contends that her actions were mischaracterized and that Sensient failed to investigate the claims. Dkt. 39 at 5. Yet the claims against

8

Larsen were corroborated by other employees and through written statements. *See* Dkt. 37 at ¶¶ 38, 40. Furthermore, Larsen's own beliefs about the events don't cast doubt on Sensient's reliance on the unprofessional conduct as a basis for terminating Larsen. Finally, Larsen's assertion about the existence of alleged comparators is too sparse to be credible. She has not identified any individual who engaged in a similar pattern of repeated unprofessional conduct. Ultimately, the evidence shows that Larsen's unprofessional behavior gave Sensient a legitimate reason to terminate her employment. No reasonable jury could conclude otherwise. For that reason, summary judgment in Sensient's favor is required.

**Conclusion**

Larsen can neither make a *prima facie* case of discrimination nor show that Sensient's legitimate non-discriminatory reason for termination was pretextual. Ample evidence shows that Sensient terminated Larsen because she engaged in unprofessional behavior even after being warned that it could result in her termination. For the reasons stated above, Sensient's motion for summary judgment is granted.

Entered: November 10, 2025          By: _____
                                        Iain D. Johnston
                                        U.S. District Judge

9